THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH

| | |
|---|---|
| ALEXANDER RIVAS,<br><br>Petitioner,<br><br>v.<br><br>RUBEN LEYVA, Acting Field Office Director, Salt Lake City Enforcement and Removal Operations, U.S. Immigration and Customs Enforcement (ICE/ERO); BARRY GOLDING, Washington County Sheriff; DAVID VENTURELLA, Acting Director of ICE; MARKWAYNE MULLIN, Secretary U.S. Department of Homeland Security; TODD BLANCHE, U.S. Attorney General,<br><br>Respondents. | **MEMORANDUM DECISION AND ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS**<br><br>Case No. 4:26-cv-00098-DN<br><br>District Judge David Nuffer |

Petitioner Alexander Rivas filed a petition for a writ of habeas corpus under 28 U.S.C. § 2241(a), alleging that he is being unlawfully confined in violation of the Constitution and laws of the United States.[1] Mr. Rivas challenges his July 28, 2026, arrest and subsequent detention by U.S. Immigration and Customs Enforcement ("ICE").[2] Respondents argue that Mr. Rivas's arrest, detention, and intended removal are authorized under 8 U.S.C. § 1231 because he is subject to a final removal order issued by an immigration judge.[3] Respondents assert that Mr. Rivas was being transported to California to complete the processing for his removal to Mexico

[1] Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 ("Petition"), docket no. 1, filed Aug. 21, 2026.

[2] *Id.* ¶¶ 13-31 at 3-6.

[3] Response to Order to Show Cause ("Response"), docket no. 12, filed Aug. 27, 2026.

when he was re-routed back to Utah due to the issuance of the Order to Show Cause[4] regarding his Petition.[5]

After reviewing the Petition and the Response and Reply,[6] which followed the entry of the Order to Show Cause, and for the reasons stated below, Mr. Rivas's Petition[7] is GRANTED. Mr. Rivas's arrest and initial detention to effectuate the final removal order are not unlawful. However, Respondents violated Mr. Rivas's due process rights by failing to comply with regulatory procedures for processing his removal to Mexico. Therefore, Mr. Rivas is entitled to immediate release from detention.

**CONTENTS**


1 BACKGROUND ..... 3
2 LEGAL STANDARD ..... 5
3 DISCUSSION ..... 5
3.1 Mr. Rivas was lawfully taken into DHS custody based on the October 28, 2022, final removal order ..... 7
3.2 Mr. Rivas's initial detention while being processed for removal to Mexico was lawful ..... 10
3.3 Mr. Rivas's due process and liberty interests have been violated by his continued detention without being afforded regulatory procedural protections ..... 12
3.3.1 The private interests affected ..... 13
3.3.2 The risk of erroneous deprivation ..... 14
3.3.3 The government's interest ..... 17
3.4 Mr. Rivas is entitled to immediate release from detention ..... 18
4 ORDER ..... 19


[4] Memorandum Decision and Order to Show Cause and Order Staying Transfer During Pendency of Petition ("Order to Show Cause"), docket no. 6, filed Aug. 21, 2026.

[5] Response at 1-2, 8-9.

[6] Reply in Support of Petition for Writ of Habeas Corpus ("Reply"), docket no. 15, filed Sept. 11, 2026. Mr. Rivas also filed a Notice of Supplemental Authority. Docket no. 18, filed Oct. 29, 2026, Respondents filed a Memorandum in Response to Notice of Supplemental Authority. Docket no. 20, filed Nov. 3, 2026. These documents have also been reviewed and considered.

[7] Docket no. 1, filed Aug. 21, 2026.

## 1 BACKGROUND

Mr. Rivas was born in, and is a native and citizen of, El Salvador.[8] On November 17, 2013, he came to the United States to seek asylum by crossing the Rio Grande River from Mexico.[9] Mr. Rivas was arrested for illegal entry in violation of 8 U.S.C. § 1325 on November 24, 2013, near Carrizo Springs, Texas.[10] He pleaded guilty and was sentenced to a prison term of six (6) days on November 27, 2013.[11]

Mr. Rivas was subsequently transported from Texas to New Jersey, where he remained in Department of Homeland Security ("DHS") custody for approximately three (3) months.[12] Mr. Rivas was released from DHS custody, which had to have occurred pursuant to 8 U.S.C. § 1231(a)(3) and 8 C.F.R. § 241.4 and § 241.13 because there was no reasonable likelihood that he could be removed to El Salvador.[13] He was given a work permit and social security number.[14] The record does not show that he was subjected to any specific terms or conditions of supervision upon his release. Mr. Rivas came to Utah to live with his sister and has since worked and supported himself and his family without any further criminal violations.[15]

Mr. Rivas applied for asylum, but his application was denied.[16] On October 28, 2022, Mr. Rivas was ordered removed from the United States by an immigration judge but was granted a

---

[8] Petition ¶ 2 at 2; Criminal Complaint at 1, *United States v. Rivas-Cruz*, DR:13-M-14461 (W.D. Tx.), docket no. 15-1, filed Sept. 11, 2026.

[9] Petition ¶ 3 at 3; Criminal Complaint at 1.

[10] Criminal Complaint at 1-2.

[11] *Id*. at 3.

[12] Reply at 5.

[13] Petition ¶ 9 at 3.

[14] *Id*. ¶ 11 at 3.

[15] *Id*. ¶¶ 11-12 at 3.

[16] Order of the Immigration Judge at 1, *In the Matter of Rivas-Cruz*, A-Number: 206-254-231 (Immigration Court), docket no. 12-1, filed Aug. 27, 2026.

withholding of removal to El Salvador, which had to have occurred because he could not be removed within the reasonably foreseeable future.[17] His application under Article III of the Convention Against Torture was withdrawn, and he waived appeal of the removal order.[18] Thus, the October 28, 2022, removal order became final.

On July 28, 2026, Mr. Rivas left his home around 5:30 a.m. for his construction job.[19] He was encountered by ICE agents, who arrested and booked him into the Washinton County Jail.[20] ICE issued a warrant for Mr. Rivas's removal and deportation that same day.[21] The stated basis for the warrant was that Mr. Rivas is subject to a final removal order issued by an immigration judge.[22] Also that same day, ICE agents provided Mr. Rivas with a notice of removal informing him of its intent to remove him to Mexico.[23] Mr. Rivas remained in custody pending the processing for his removal to Mexico.[24]

Nearly one month after his arrest, on August 21, 2026, Mr. Rivas filed his Petition challenging his arrest, detention, and impending removal to Mexico as violating due process, applicable immigration statutes and regulations, and his right against cruel and unusual punishment.[25] That same day an Order to Show Cause issued, which prohibited Mr. Rivas's transfer or removal pending resolution of his Petition.[26] At the time the Order to Show Cause

---

[17] *Id.*

[18] *Id.* at 1-2.

[19] Petition ¶ 13 at 3.

[20] *Id.* ¶ 15 at 3.

[21] Warrant of Removal/Deportation, docket no. 12-2, filed Aug. 27, 2026.

[22] *Id.*

[23] Notice of Removal, docket no. 12-3, filed Aug. 27, 2026.

[24] Petition ¶ 20 at 4.

[25] *Id.* at 9-25.

[26] Order to Show Cause at 4-5.

was issued, Mr. Rivas was in ICE transit to California to complete his processing for removal to Mexico.[27] Mr. Rivas was re-routed back to Utah and remains in custody.[28] Respondents do not dispute Mr. Rivas's allegations that he has not been given an initial informal interview as part of his release's revocation or his processing for removal to Mexico.[29]

## 2 LEGAL STANDARD

A district court may grant a writ of habeas corpus to any person who "is in custody in violation of the Constitution or laws or treaties of the United States."[30] Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest."[31] Federal courts have jurisdiction to hear habeas corpus claims by noncitizens challenging the constitutionality of their detention.[32] The individual in custody bears the burden of establishing that their detention is unlawful.[33]

## 3 DISCUSSION

The legal questions presented by this case are complex. "As the Ninth Circuit has noted, the [Immigration and Nationality Act ("INA")] has been compared to a 'morass,' a 'Gordian

[27] Response at 1-2.

[28] *Id.*

[29] Petition at 16.

[30] 28 U.S.C. § 2241(c)(3).

[31] *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001).

[32] *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001); *see also Sierra v. Immigr. & Naturalization Serv.*, 258 F.3d 1213, 1217 (10th Cir. 2001).

[33] *Tanchez v. Noem*, No. 2:25-cv-01150-TC, 2026 WL 125184, *4 (D. Utah Jan. 16, 2026).

knot,' and 'King Minos's labyrinth in ancient Crete.'"[34] Courts in this district,[35] this circuit,[36] and across the country[37] have recently been asked to weigh in on factual settings in this area of the law.[38] "In recent months the interplay between [8 U.S.C.] § 1225(b)(2) and § 1226(a) has become a hotly contested issue[.]'"[39] This case, however, does not present questions regarding § 1225(b)(2) and § 1226(a), which relate to the detention of individuals while immigration proceedings are initiated or ongoing.[40] Rather, the legal issues in this case pertain to 8 U.S.C.

---

[34] *Maldonado Vazquez v. Feeley,* 805 F. Supp. 3d 1112, 1137 (D. Nev. 2025) (quoting *Torres v. Barr*, 976 F.3d 918, 923 (9th Cir. 2020)).

[35] *Tanchez,* 2026 WL 125184 at *10; *Carbajal v. Wimmer*, No. 2:26-cv-00093-TC, 2026 WL 353510 (D. Utah Feb. 9, 2026); *Cisneros v. Noem*, No. 2:25-cv-01170-HCN, 2026 WL 396300 (D. Utah Feb. 12, 2026); *Vasquez v. Noem*, No. 2:25-cv-01146-JNP, 2026 WL 309631 (D. Utah Feb. 5, 2026); *Reyes v. United States Immigr. & Custom Enf't*, No. 2:25-cv-01159-TC, 2026 WL 266952 (D. Utah Feb. 2, 2026); *Velasquez v. Brooksby*, No. 4:26-cv-00018-DN-PK, 2026 WL 592355 (D. Utah Mar. 3, 2026).

[36] *Jose-De-Jose v. Noem*, No. CIV-25-1454-SLP, 2026 WL 360045 (W.D. Okla. Feb. 9, 2026); *Gutierrez v. Garcia*, No. 2:25-cv-001145-WJ-KRS, 2026 WL 310064 (D.N.M. Feb. 5, 2026); *Hernandez v. Baltazar*, No. 1:25-cv-03094-CNS, 2025 WL 2996643 (D. Colo. Oct. 24, 2025); *Gutierrez Sosa v. Holt*, No. CIV-25-257-PRW, 2026 WL 36344, *3-5 (W.D. Okla. Jan. 6, 2026); *Montoya v. Holt*, No. CIV-235-1231-JD, 2025 WL 3733302, *5-12 (W.D. Okla. Dec. 26, 2025); *Toledo Santos v. Grant*, No. CIV-25-1433-SLP, 2026 WL 184287 (W.D. Okla. Jan. 23, 2026); *Rafibaev v. Noem*, No. 26-cv-00461-PAB, 2026 WL 607559, *4 (D. Colo. Mar. 4, 2026).

[37] *Salcedo Aceros v. Kaiser*, No. 25-cv-06924-EMC, 2025 WL 2637503, *2 (N.D. Cal. Sept. 12, 2025); *Bautista v. Santacruz*, No. 5:25-cv-01873-SSS-BFM, 2026 WL 468284 (C.D. Cal. Feb. 18, 2026); *Bautista v. Santacruz*, No. 5:25-cv-01873-SSS-BFM, 2025 WL 3713987 (C.D. Cal. Dec. 18, 2025), *judgment entered sub nom. Bautista v. Noem*, No. 5:25-cv-01873-SSS-BFM, 2025 WL 3678485 (C.D. Cal. Dec. 18, 2025); *E.C. v. Noem*, No. 2:25-cv-01789-RFB-BNW, 2025 WL 2916264 (D. Nev. Oct. 14, 2025); *Patel v. Crowley*, No. 25-C-11180, 2025 WL 2996787 (N.D. Ill. Oct. 24, 2025); *N-E-M-B v. Wamsley*, No. 3:25-cv-989-SI, 2025 WL 3527111 (D. Or. Dec. 9, 2025); *Faizyan v. Casey*, 2025 WL 3208844, *4-6 (S.D. Cal. Nov. 17, 2025); *Lepe v. Andrews*, 801 F. Supp. 3d 1104, (E.D. Cal. Sept. 23, 2025); *Petion v. Hyde*, No. 2:25-cv-00535-SDN, 2025 WL 3072567 (D. Me. Nov. 3, 2025); *Da Cunha v. Freden*, No. 25-cv-6532-MAV, 2025 WL 3280575 (W.D.N.Y. Nov. 25, 2025); *Huang v. Almodovar*, No. 25 CIV 9346 (DEH), 2025 WL 3295912 (S.D.N.Y. Nov. 26, 2025); *Maldonado v. Cabezas*, No. CV 25-13004, 2025 WL 2985256, *4 (D.N.J. Oct. 23, 2025); *Briceno Solano v. Mason*, No. 2:26-cv-00045, 2026 WL 311624, *20 (S.D. W. Va. Feb. 4, 2026); *Tinajero Rodriguez v. Mason, et al.*, No. 2:26-cv-00122, 2026 WL 510426, *2 (S.D. W. Va. Feb. 24, 2026); *Chavez Ochoa & Nunez Lopez v. Mason,* No. 2:26-cv-00130, 2026 WL 541144, *2 (S.D. W. Va. Feb. 26, 2026); *Sanchez v. Noem*, No. CV 3:26-0067, 2026 WL 483475, *4 (S.D. W. Va. Feb. 20, 2026); *Dominguez Izaguirre v. Mason*, No. 2:26-cv-00121, 2026 WL 561235, *7 (S.D. W. Va. Feb. 27, 2026); *Urquilla-Ramos v. Trump*, No. 2:26-cv-00066, 2026 WL 475069, *18 (S.D. W. Va. Feb. 19, 2026); *Coalition for Humane Immigrant Rights v. Noem,* 805 F. Supp. 3d 48, 64 (D.C. Cir. Aug. 1, 2025).

[38] For a relatively current summary of cases, *see* Kyle Cheney, Even Trump's own appointees are ruling against ICE's mass detention strategy, Politico, Feb. 12, 2026; *see also* Kyle Cheney & Jessie Blaeser, Explore the data: More than 13,600 rulings against Trump in Ice cases, Politico, June 16, 2026.

[39] *Villegas Salazar v. Sheriff of Linn County*, No. C26-98-LTS-MAR, 2026 WL 1651508, *2 (N.D. Iowa June 8, 2026); *Coalition for Humane Immigrant Rights,* 805 F. Supp. 3d at 64.

[40] 8 U.S.C. §§ 1225(b)(2), 1226(a).

§ 1231 and related regulations for the detention and removal of an individual who is already subject to a final removal order.

After thorough review of the parties' memoranda and the applicable statutes and regulations,[41] central legal issues emerge: (1) whether Mr. Rivas was lawfully taken into custody by ICE agents on July 28, 2026, on the basis of the October 28, 2022, final removal order; (2) whether Mr. Rivas's detention while being processed for removal to Mexico is lawful; and (3) whether Respondents have complied with the regulatory procedures for revoking Mr. Rivas's release and processing his removal to Mexico. As will be discussed, Mr. Rivas's arrest and initial detention pending his removal to Mexico are lawful. However, because Respondents failed to comply with the regulatory procedures for revoking Mr. Rivas's release and processing his removal to Mexico, Respondents have violated Mr. Rivas's due process rights.

### 3.1 Mr. Rivas was lawfully taken into DHS custody based on the October 28, 2022, final removal order

ICE's authority to detain, release, and re-detain individuals who are subject to a final removal order is governed by 8 U.S.C. § 1231(a). "[W]hen an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days[.]"[42] The individual must be detained during this 90-day removal period.[43] If the individual "does not leave or is not removed within the removal period," they may be released "subject to supervision under regulations prescribed by the Attorney General."[44] An individual ordered removed who is inadmissible under 8 U.S.C. § 1182 may also be detained beyond the removal period.[45] And

[41] *Id.* § 1231; 8 C.F.R. §§ 241.4(l), 241.13(i).

[42] 8 U.S.C. § 1231(a)(1)(A).

[43] *Id.* § 1231(a)(2)(A).

[44] *Id.* § 1231(a)(3).

[45] *Id.* § 1231(a)(6).

"[t]he Attorney General shall arrange for appropriate places of detention for [individuals] detained pending removal or a decision on removal."[46] But "once removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute."[47]

"[T]he Due Process Clause protects an [individual] subject to a final order of deportation, though the nature of that protection may vary depending upon status and circumstance."[48] The regulations that govern the detention, release, and revocation of release for an individual subject to a withheld final removal order, 8 C.F.R. § 241.4 and § 241.13, provide a framework for the due process protections afforded to individuals such as Mr. Rivas.[49] Section 241.4 provides that "[t]he [DHS] Executive Associate Commissioner [for Field Operations] shall have authority, in the exercise of discretion, to revoke release and return to [DHS] custody an [individual] previously approved for release[.]"[50]

"Release may be revoked in the exercise of [DHS's] discretion when, in the opinion of the revoking official . . . [i]t is appropriate to enforce a removal order or to commence removal proceedings against [the individual]."[51] Specifically, for individuals that were released because there was no significant likelihood of removal in the reasonably foreseeable future, § 241.13 provides that "[DHS] may revoke an [individual]'s release . . . and return the [individual] to custody if, on account of changed circumstances, [DHS] determines that there is a significant likelihood that the [individual] may be removed in the reasonably foreseeable future."[52]

---

[46] *Id.* § 1231(g)(1).

[47] *Zadvydas*, 533 U.S. at 699.

[48] *Id.* at 694-694 (internal citations omitted).

[49] 8 C.F.R. §§ 241.4(b)(3)-(4), 241.13(a), (b)(1).

[50] *Id.* § 241.4(l)(2).

[51] *Id.* § 241.4(l)(2)(iii).

[52] *Id.* § 241.13(i)(2).

Notice of the revocation of an individual's release is not required in advance of the individual being taken into custody based on a final removal order. Rather, the regulations provide for due process protections *after* the individual is re-detained: "Upon revocation, the [individual] will be notified of the reasons for revocation of his or her release. [DHS] will conduct an initial informal interview promptly after his or her return to [DHS] custody to afford the [individual] an opportunity to respond to the reasons for revocation stated in the notification."[53]

Here, it is undisputed that Mr. Rivas is subject to a final removal order. The October 28, 2022, final removal order to El Salvador was withheld because there was no significant likelihood of removal in the reasonably foreseeable future. But that withholding does not preclude Mr. Rivas's release from being revoked through the exercise of DHS's discretion and his re-detention to effectuate the final removal order based on a changed circumstance.[54] When ICE agents took Mr. Rivas into custody on July 28, 2026, he was informed that the warrant for his removal and deportation was based on the October 28, 2022, final removal order.[55] And he was provided written notice of his release's revocation based on the changed circumstance that ICE intended to remove him to Mexico, not El Salvador.[56]

Mr. Rivas may disagree with DHS's exercise of its discretion to revoke his release, or that Mexico is a viable third-party country to which he may be removed within the reasonably foreseeable future. But those disagreements do not render unlawful his July 28, 2026, arrest and initial detention. Mr. Rivas identifies no binding or persuasive authority requiring that he be

---

[53] *Id.* § 241.13(i)(3); *see also Id.* § 241.4(l).

[54] *Id.* § 241.13(j)(3).

[55] Warrant of Removal/Deportation.

[56] Notice of Removal.

given notice of his release's revocation in advance of being re-detained into DHS custody. Nor does Mr. Rivas identify any binding or persuasive authority requiring his immigration case to be reopened before he may be re-detained on the October 28, 2022, final removal order.[57]

Because Mr. Rivas is subject to the October 28, 2022, final removal order and was given written notice of the basis for his arrest and the revocation of his release upon being taken into DHS custody, his July 28, 2026, arrest was not unlawful or violative of his due process protections. The revocation of Mr. Rivas's release, by the exercise of DHS discretion to enforce the final removal order by deporting Mr. Rivas to Mexico, was authorized by statue and regulation.[58] And, as will be discussed, there are procedural mechanisms for Mr. Rivas to administratively present evidence and raise challenges to his continued detention and removal before a final administrative decision is made regarding his removal to Mexico.

### 3.2 Mr. Rivas's initial detention while being processed for removal to Mexico was lawful

The Supreme Court has held that "[d]etention during removal proceedings is a constitutionally permissible part of that process."[59] Section 1231, and its regulations § 241.4 and § 241.13, expressly authorize detention during an individual's processing for removal and pending a determination on any administrative challenges the individual raises to the intended removal.[60] "[T]he habeas court must ask whether the detention in question exceeds a period

---

[57] Indeed, the case law cited by Mr. Rivas expressly holds that "[g]iven the express grant of authority to DHS under § 1231(b)(2) and § 1240.12(d), . . . DHS may designate a removal country outside of removal proceedings as permitted by § 1231(b)." *Aden v. Nielsen*, 409 F.Supp.3d 998, 1008 (W.D. Wash. 2019). The district "[c]ourt [w]as not persuaded that DHS should bear the burden of moving to reopen [immigration proceedings]." *Id.* at 1021.

[58] 8 U.S.C. § 1231; 8 C.F.R. §§ 241.4(l), 241.13(i).

[59] *Demore v. Kim*, 538 U.S. 510, 530 (2003); *see also Zadvydas*, 533 U.S. at 699-701; *Sosa v. Greene*, 68 Fed. App'x 901, 902 (10th Cir. 2003).

[60] 8 U.S.C. § 1231(a)(6), (g)(1); 8 C.F.R. §§ 241.4(a), (l), 241.13(a), (i), (j).

reasonably necessary to secure removal."[61] This is measured "primarily in terms of the statute's basic purpose, namely, assuring the alien's presence at the moment of removal."[62] "[I]f removal is not reasonably foreseeable, the court should hold continued detention unreasonable and no longer authorized by statute."[63]

Following the revocation of an individual's release, "[t]he normal review process will commence with notification to the alien of a records review and scheduling of an interview, which will ordinarily be expected to occur within approximately three months after release is revoked."[64] However, the Supreme Court has held that a detention period of six months for an individual subject to a final removal order is presumptively reasonable.[65] But the Tenth Circuit Court of Appeals recently held that this "presumption applies only to the first six months that elapse after the [initial] removal period is triggered.[66] Six months is still consistent with timeframes of § 241.13. Section 241.13 provides that "[i]f [DHS] has denied an [individual]'s request for release . . . the [individual] may submit a request for review of his or her detention . . . six months after [DHS]'s last denial of release[.]"[67]

"After [the initial] 6-month period, once the [individual] provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing."[68] But ultimately, "an

[61] *Zadvydas*, 533 U.S. at 699.

[62] *Id*.

[63] *Id*. at 699-700.

[64] 8 C.F.R. § 241.4(l)(3).

[65] *Zadvydas*, 533 U.S. at 701.

[66] *Abedi v. Carter*, --- F.4th ---, 2026 WL 3149141, *26 (10th Cir. 2026).

[67] 8 C.F.R. § 241.13(j).

[68] *Zadvydas*, 533 U.S. at 701.

[individual] may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future."[69]

Mr. Rivas was arrested and detained on July 28, 2026. He filed his Petition less than one month after his arrest on August 21, 2026. The length of his detention at the time of his Petition's filing was well within the three-month timeframe expected for the normal processing of removal under § 241.4(l)(3). And his detention still remains within the six-month period of § 241.13(j) for requesting review of DHS's last denial of release. Therefore, Mr. Rivas's initial detention while being processed for removal to Mexico is not unlawful or violative of his due process protections. But this does not mean that Mr. Rivas's due process rights have not been violated because of his continued detention where Respondents have not complied with the regulatory procedures for processing his removal.

### 3.3 Mr. Rivas's due process and liberty interests have been violated by his continued detention without being afforded regulatory procedural protections

Mr. Rivas claims his arrest, detention, and intended removal to Mexico violates due process and his rights against cruel and unusual punishment.[70] Respondents maintain that Mr. Rivas's arrest, detention, and removal to Mexico is proper to effectuate the October 28, 2022, final removal order.[71] The "essence of due process is the requirement that 'a person in jeopardy of serious loss be given notice of the case against him and opportunity to meet it.'"[72]

---

[69] *Id.*

[70] Petition at 9-25.

[71] Response at 4-10.

[72] *Mathews v. Eldridge*, 424 U.S. 319, 348 (1976) (quoting *Joint Anti-Fascist Comm. v. McGrath*, 341 U.S. 123, 171-72 (1951) (Frankfurter, J., concurring)).

The Tenth Circuit applies the "three distinct factors" established by the Supreme Court in *Mathews v. Eldridge*[73] to determine procedures "necessary to ensure that the deprivation of a protected liberty interest meets the demands of the Constitution."[74] To determine what process is due, courts consider three factors: "(1) the private interest affected; (2) the risk of an erroneous deprivation; and (3) the government's interest."[75]

#### 3.3.1 The private interests affected

First, Mr. Rivas has a clear interest in remaining free from detention. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty [the Due Process Clause] protects."[76] Noncitizen detainees have liberty interests affected by the application of 8 U.S.C. § 1231 and its associated regulations. Some liberty interests which other courts have identified include: due process procedural protections;[77] "reliance interests;"[78] "continued freedom from civil immigration confinement[;]"[79] and "the most significant liberty interest there is—the interest in being free from imprisonment."[80]

Liberty granted, even limited liberty, is protected by due process safeguards. The Supreme Court has held that a protected liberty interest may arise from a conditional release, like

---

[73] *Id.*

[74] *Hattrup v. United States*, 845 Fed. App'x 733, 737 (10th Cir. 2021); *United States v. Muhtorov*, 20 F.4th 558, 623 (10th Cir. 2021); *see also Mathews*, 424 U.S. 319.

[75] *Mathews*, 424 U.S. 319; *see also Martinez v. Chestnut*, No. 1:25-cv-1826 TLN CKD P, 2026 WL 121221, *3 (E.D. Cal. Jan. 16, 2026).

[76] *Zadvydas*, 533 U.S. at 690.

[77] *Salcido Aceros*, 2025 WL 2637503, *8; *Briceno Solano*, 2026 WL 311624, *14.

[78] *Salcido Aceros*, 2025 WL 2637503, *8 (quoting Memorandum from Benjamine Huffman, Acting Sec'y of Homeland Sec., to U.S. Immigr. & Customs Enf't et al., *Guidance Regarding How to Exercise Enforcement Discretion* (Jan. 23, 2025) (recognizing that noncitizens granted parole have "reliance interests")).

[79] *Lopez Benitez*, 795 F. Supp. 3d 475.

[80] *Munoz Materano v. Arteta*, 804 F. Supp. 3d 395 (S.D.N.Y. 2025).

parole, from physical restraint.[81] Mr. Rivas had a liberty interest when he was released from DHS custody in early 2014, and when the October 28, 2022, final removal order to El Salvador was withheld. And he has lived freely within the United States since 2014. On this record, Mr. Rivas has a clear interest in remaining free from detention and from being removed to an inappropriate county.

### 3.3.2 The risk of erroneous deprivation

The second *Mathews* factor also weighs in Mr. Rivas's favor. Civil immigration detention, which is "nonpunitive in purpose and effect" is typically justified under the Due Process Clause only when a noncitizen presents a risk of flight or danger to the community.[82] But Mr. Rivas is subject to a final removal order. Detention for processing to effectuate the final removal order is specifically contemplated by statute and regulation,[83] and is constitutionally permissible under Supreme Court precedent.[84] And removal to a third-party country is expressly authorized by statute.[85] The relevant regulations also set forth administrative procedures for an individual to present evidence and raise challenges during this processing and prior to a final administrative decision on removal.[86]

The revocation of an individual's release triggers an administrative review process, including a prompt informal interview and "notification to the [individual] of a records review

---

[81] *Young v. Harper*, 520 U.S. 143, 147 (1997) (citing *Morrissey v. Brewer*, 408 U.S. 471, 477 (1972)).

[82] *Zadvydas*, 533 U.S. at 690.

[83] 8 U.S.C. § 1231; 8 C.F.R. §§ 241.4(l), 241.13(i).

[84] *Demore*, 538 U.S. at 530; *see also Zadvydas*, 533 U.S. at 699-701; *Sosa v. Greene*, 68 Fed. App'x 901, 902 (10th Cir. 2003).

[85] 8 U.S.C. § 1231(b). The Supreme Court has recently permitted such removals to third-party countries to continue temporarily while a case was set to be argued in the December 2026 argument session. *Dep't of Homeland Sec. v. D.V.D*, --- S.Ct. ----, 2026 WL 2917860 (Mem.) (Sept. 29, 2026).

[86] 8 C.F.R. §§ 241.4(l), 241.13(i), (j).

and scheduling of an interview, which will ordinarily be expected to occur within approximately three months after release is revoked."[87] That review must "include a final evaluation of any contested facts relevant to the revocation and a determination whether the facts as determined warrant revocation and further denial of release."[88]

Additionally, at any time after a removal order becomes final, and as part of the administrative review procedures, the individual "may submit a written request for release to [DHS's Headquarters Post-order Detention Unit ("HQPDU")] asserting the basis for the [individual]'s believe that there is no significant likelihood that the [individual] will be removed in the reasonably foreseeable future."[89] "The [individual] may submit whatever documentation to the HQPDU he or she wishes in support of the assertion that there is no significant likelihood of removal in the reasonably foreseeable future."[90]

The submission of such a request also triggers additional administrative response, notice, and review procedures.[91] The individual must be permitted to provide "relevant information to [DHS], including reasons why his or her removal would not be significantly likely in the reasonably foreseeable future[,]" and "an opportunity to respond to the evidence on which the Service intends to rely . . . and other evidence of record presented by the Service prior to any HQPDU decision."[92] But "[DHS] may continue to detain the [individual] until it has made a determination . . . whether there is a significant likelihood the [individual can be removed in the

---

[87] 8 C.F.R. §§ 241.4(l)(3); 241.13(i)(3).

[88] *Id.* § 241.4(l)(3).

[89] *Id.* § 241.13(d)(1).

[90] *Id.*

[91] *Id.* § 241.13(e).

[92] *Id.* § 241.13(e)(4).

reasonably foreseeable future."[93] And the individual "may submit a request for review of his or her detention . . . six months after [DHS]'s last denial of release[.]"[94]

There is no contention by Respondents that Mr. Rivas is or was a flight risk or a danger to the community. But there is also no dispute that Mr. Rivas is subject to the October 28, 2022, final removal order. His initial detention for processing to effectuate his removal to Mexico was not unlawful or violative of his due process protections. However, the risk that Mr. Rivas's continued detention and removal to Mexico are erroneous is particularly high where it is undisputed that Respondents failed to comply with the regulatory procedures for processing his removal.

The Tenth Circuit has recently held that "the [g]overnment violate[s] the due process protections established in [8 C.F.R. § 241.13] by failing to provide [a detained individual subject to a final removal order] a prompt informal interview when it revoke[s the individual's] release."[95] And such a failure is "per se prejudicial, thus warranting habeas relief without the need for an additional showing of prejudice."[96] "[The] ability to contest [ones] unlawful detention through litigation does not render harmless [a] detention without due process."[97] "The lack of process [i]s itself an injury" that causes prejudice.[98]

Mr. Rivas's release from DHS custody in early 2014 could only have occurred pursuant to 8 U.S.C. § 1231(a)(3) and 8 C.F.R. § 241.4 and § 241.13 because there was no reasonable likelihood that he could be removed to El Salvador. The immigration judge's withholding of the

---

[93] *Id.* § 241.13(e)(1).

[94] *Id.* § 241.13(j).

[95] *Abedi*, 2026 WL 3149141, *14.

[96] *Id.* *21.

[97] *Id.*

[98] *Id.* *24.

October 28, 2022, final removal order also could only have occurred because Mr. Rivas could not be removed to El Salvador within the reasonably foreseeable future. And that Mr. Rivas was given notice of ICE's intent to remove him to a third-party country also undercuts the government's contention that he was not released under § 241.13, and therefore not subject to the regulation's procedural requirements.[99] Mr. Rivas "was released under § 241.13, [and] his release could be revoked only pursuant to the procedural framework established in § 241.13(i)."[100]

It is undisputed that Mr. Rivas was not given an initial informal interview in the weeks between his arrest and the filing of his Petition. And it appears from Respondents' incorrect contention that Mr. Rivas is not subject to § 241.13,[101] that it is very likely Mr. Rivas still has not received an informal interview. Because Mr. Rivas has been detained for several months without receiving the informal interview required by § 241.13(i)(3), Respondents have failed to comply with their own regulations and prejudicially violated Mr. Rivas's due process rights.[102]

Therefore, where Mr. Rivas's due process rights been prejudicially violated by Respondent's failure to comply with the procedural requirements of § 241.13(i), the risk of error in Mr. Rivas's continued detention for processing and in his intended removal to Mexico are high.

#### 3.3.3 The government's interest

Regarding the last *Mathews* factor, the government clearly has an interest in enforcing immigration laws. And this interest is particularly high when, like with Mr. Rivas, the individual

---

[99] *Abedi*, 2026 WL 3149141, *17.

[100] *Id.* *18.

[101] Memorandum in Response to Notice of Supplemental Authority at 1-3.

[102] *Abedi*, 2026 WL 3149141, *17-25.

is subject to a final removal order.[103] Nevertheless, the government's interest cannot justify Respondent's failure to comply with their own regulations or their prejudicial violation of Mr. Rivas's due process protections. Mr. Rivas's liberty interests were violated by his continued detention without being afforded the procedural protections of § 241.13(i). And the appropriate remedy for these violations is Mr. Rivas's immediate release.

### 3.4 Mr. Rivas is entitled to immediate release from detention

Upon finding a constitutional violation, a district court may grant a writ of habeas corpus and "dispose of the matter as law and justice so require."[104] Release from detention is the "typical remedy" for "unlawful executive detention."[105] Because Mr. Rivas's continued detention in violation of his due process and liberty interests is unlawful, his immediate release from detention is the only appropriate remedy.

Respondents are ordered to release Mr. Rivas immediately. Any attempt to re-detain Mr. Rivas must be supported by a valid statutory authority and, absent circumstances permitting arrest and detention under another regulatory procedure, must comply with the regulatory procedures of 8 C.F.R. § 241.13(i).

---

[103] *Demore*, 538 U.S. at 530; *see also Zadvydas*, 533 U.S. at 699-701; *Sosa v. Greene*, 68 Fed. App'x 901, 902 (10th Cir. 2003).

[104] 28 U.S.C. §§ 2241(a), 2243.

[105] *Munaf v. Geren*, 553 U.S. 674, 693 (2008).

## 4 ORDER

IT IS HEREBY ORDERED that Mr. Rivas's Petition[106] is GRANTED.

IT IS FURTHER ORDERED THAT:

1. Respondents must immediately release Mr. Rivas from detention.

2. Within four (4) business hours of the issuance of this order, and every four (4) business hours thereafter until Mr. Rivas is released, Respondents must file a report on the status of their compliance with this Order to release Mr. Rivas.

3. Any attempt to re-detain Mr. Rivas must be supported by a valid statutory authority and, absent circumstances permitting arrest and detention under another regulatory procedure, must comply with the regulatory procedures of 8 C.F.R. § 241.13(i).

4. Any request by Mr. Rivas to recover fees or costs must be made by motion.

The Clerk is directed to close the case.

Signed November 10, 2026.

BY THE COURT

David Nuffer
United States District Judge

[106] Docket no. 1, filed Aug. 21, 2026.